IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JULIA JOHNSON, JAMES ALLEN SANDERS, PAUL SEABURY, MATTHEW SINCLAIR, CATHY WILLIAMS, KENDRICKS DOUGLAS, TAMMY MCCALL AND BARRY ALFORD Individually and on behalf of the class they seek to represent, <br><br> Plaintiffs, <br><br> vs. <br><br> FLAKEBOARD AMERICA LIMITED, <br><br> Defendant. | C/A No. 4:11-2607-TLW-KDW <br><br><br> REPORT AND RECOMMENDATION |

Before the court are Defendant's Motion to Strike and/or Dismiss Class Allegations (ECF No. 35),[1] Plaintiffs' response in opposition to Defendant's motion (ECF No. 53), and Defendant's reply in further support of its motion (ECF No. 61).

All pretrial proceedings in this case were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) D.S.C. Because a motion to dismiss is dispositive, this report and recommendation is entered for the district judge's consideration.

---

[1] Also technically pending is Defendant's prior similar motion to strike, which was filed October 20, 2011, and concerned Plaintiffs' then-operative complaint. ECF No. 6. Plaintiffs filed an Amended Complaint (ECF No. 29), which is the subject of Defendant's November 28, 2011 motion to strike (ECF No. 35). Defendant's initial motion to strike (ECF No. 6) is now moot.

I. Procedural and Factual Background[2]

Plaintiffs are present and former African-American employees of Defendant Flakeboard America Limited ("Flakeboard") who allege they have been subjected to a racially hostile work environment and/or discriminatorily denied promotions. Am Compl., ECF No. 29. Plaintiffs initiated this purported class action against Flakeboard on September 27, 2011 (ECF No. 1), and filed the operative Amended Complaint on November 14, 2011. ECF No. 29. Plaintiffs filed this action on behalf of themselves and on behalf of the class they seek to represent, which they define as "all present and former African-American employees of Flakeboard who, at any time since March 28, 2008 have worked in Flakeboard's MDF Manufacturing and CPB Carolina Particle Board plants, which are both located in Bennettsville, South Carolina, and who have been subjected to a racially hostile work environment and/or have been discriminatorily denied a promotion." ECF No. 29 ¶ 14.

A. Plaintiffs' Allegations

Plaintiffs allege Flakeboard discriminated against them individually and the class they seek to represent by subjecting them to a racially hostile work environment and discriminating against them with respect to selections for higher level and better paying positions in violation of Title VII of the Civil Rights Act of 1964, as amended. *Id.* ¶ 63. Plaintiffs allege they have been subjected to race discrimination based on "a continuous pattern or practice of intentional discrimination affecting their promotional opportunities and their working environment, as well as a battery of practices having unlawful disparate impact on opportunities for advancement." *Id*. ¶ 64. They allege the means of discrimination include "Flakeboard's selection policies and procedures, its working environment policies and procedures, and the unequal terms and conditions of employment to which Plaintiffs and the

---
[2] These facts are taken from Plaintiff's Amended Complaint, ECF No. 29.

purported class were subjected." *Id.* Examples of the racially hostile work environment include the failure of White managers to take corrective action in response to the "use of racial statements, slurs or jokes or the wearing of racially incendiary paraphernalia." *Id.* ¶ 68. Plaintiffs allege that Flakeboard's managers conducted inadequate and/or superficial investigations of complaints made to White supervisors and failed to implement adequate procedures to alter the racially hostile work environment. *Id.* ¶ 69.

Flakeboard moved to strike and/or dismiss the class allegations in the Amended Complaint (ECF No. 35) on November 28, 2011, principally arguing Plaintiffs' attempt to bring class claims should be dismissed at the pleadings stage because their Amended Complaint does not include allegations that survive the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Plaintiffs argue they have sufficiently pleaded appropriate class allegations and claim Defendant's motion is premature as Plaintiffs must be permitted class discovery so they can prove the merits of their class claims at the class-certification stage. For the reasons that follow, the undersigned agrees with Plaintiffs and recommends Defendant's motion to strike be denied.

B. Facts Alleged As to the Named Plaintiffs

Plaintiff Julia Johnson was employed by Flakeboard at its CPB Carolina Particle Board Plant from May 2001 until November 21, 2008, as a lab technician. ECF No. 29 ¶ 31. Ms. Johnson alleges that she applied for but was denied the opportunity to interview for two positions that were subsequently given to lesser-qualified White males. *Id.* ¶ 32. Later, when laid off for allegedly economic reasons, Ms. Johnson was not recalled to work when another White female lab technician was recalled within one week, and two other White females were given lab technician positions. *Id.* ¶ 34. Ms. Johnson was never recalled to

work, and was not offered a severance package but believes other White employees who were laid off did receive severance packages. *Id*. Ms. Johnson alleges that throughout her employment with Flakeboard she was exposed to racially offensive comments, graffiti, and paraphernalia, and although she complained about the treatment, nothing was ever done about her complaints. *Id*. ¶ 35.

Plaintiff James Sanders has been employed in various positions at the Flakeboard CPB Carolina Particle Board Plant since May 2001. ECF No. 29 at ¶ 36. Mr. Sanders alleges that he applied for but never received an interview for numerous higher paying positions, but lesser-qualified White employees were awarded the positions. *Id*. ¶ 37. Mr. Sanders also alleges that throughout his employment with Flakeboard he was exposed to racially offensive comments, graffiti, and clothing worn by managers and co-employees, and although he complained about it, nothing was ever done about his complaints. *Id*. ¶ 38.

Plaintiff Paul Seabury was employed by Flakeboard from 1994 until June 2009. ECF No. 29 at ¶ 39. Mr. Seabury alleges that he was terminated by Flakeboard for discriminatory and retaliatory reasons because he complained about previous discrimination. *Id*. ¶ 40. Mr. Seabury alleges that on numerous occasions he sought and was denied interviews for promotions to higher paying positions. *Id*. Mr. Seabury further alleges that throughout his employment with Flakeboard he was exposed to racially offensive comments and although he complained about the treatment, nothing was ever done about his complaints. *Id*. ¶ 41.

Plaintiff Michael Sinclair was employed by Flakeboard from March 2008 to approximately December 2010 at the MDF Manufacturing Plant. ECF No. 29 ¶ 42. In early 2009 Mr. Sinclair took a general aptitude test for a supervisory position. A White male employee took the test at the same time, and was allowed to retake the test by White

supervisors and ultimately selected for the position. Mr. Sinclair was not allowed to retake the test. *Id*. ¶ 43. Mr. Sinclair alleges that throughout his employment he repeatedly encountered a racially hostile work environment, and was treated differently than White employees. *Id*. ¶¶ 45-46.

Plaintiff Cathy Williams was employed by Flakeboard at both its Manufacturing Plant and its Carolina Particle Board Plant from August 1991 until November 21, 2008. ECF No. 29 ¶ 47. Ms. Williams alleges that she was treated differently than her White counterparts. *Id*. ¶ 48. Ms. Williams applied for and was denied a promotion allegedly because of lack of mechanical electrical experience but the position was given to a White female who also had no mechanical electrical experience and less overall work experience. *Id*. Ms. Williams was exposed to racially offensive comments, jokes, graffiti, and paraphernalia, and although she complained, nothing was ever done. *Id*. ¶ 50.

Plaintiff Kendricks Douglas has been employed at Flakeboard's MDF Manufacturing Plant since July 1999, first on the package line, then as a technician, and currently as a Saw Operator. ECF No. 29 ¶ 51. Mr. Douglas alleges that throughout his employment he has been treated worse than his White counterparts in the terms and conditions of his employment. *See id*. ¶¶ 52-53. Mr. Douglas also alleges that he has been continuously exposed to racially offensive comments, jokes, graffiti, and paraphernalia and although he has repeatedly complained, nothing has ever been done about his complaints. *Id*. ¶ 53.

Plaintiff Tammy McCall has been employed at the CPB Carolina Particle Board Plant since May 29, 2001. ECF No. 29 ¶ 54. Ms. McCall alleges that after scoring well on a test for the position of Environmental Assistant, Flakeboard decided not to fill the position because, based on the test scores, the position would have to go to Ms. McCall. *Id*. ¶ 55.

Ms. McCall also alleges that throughout her employment she has been exposed to racially offensive comments, statements, and paraphernalia. *Id.* ¶¶ 56-57.

Plaintiff Barry Alford was employed by Flakeboard at its MDF Manufacturing Plant from March 19, 2007 until March 2011. ECF No. 29 ¶ 58. Mr. Alford alleges he was discriminatorily denied promotions and pay increases, and although he complained, Flakeboard did not undertake any investigations. *Id.* ¶ 59. Mr. Alford alleges that throughout his employment he was exposed to racially offensive comments, jokes, graffiti, and paraphernalia, and despite his complaints nothing was ever done. *Id.* ¶ 60.

II. Discussion

A. Standard of Review

Defendant makes its Motion to Strike and/or Dismiss Class Allegations pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23(d)(1)(D). When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiffs. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,—, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Accordingly, Plaintiffs must put forth claims that cross "the line from conceivable to plausible." *Id.* at 1950–51 (internal quotation omitted).

Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money. *Billips v. NC Benco Steel, Inc.*, No. 5:10CV95-V, 2011 WL 4829401, at *1 (W.D.N.C. Oct. 12, 2011). Upon motion by a party, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Despite the "broad discretion" afforded to district courts under this rule, "striking a party's pleadings is an extreme measure" and thus such motions are "viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation marks and citations omitted); *see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 247 (4th Cir. 2007) (noting that district court "was aware" that motions to strike under Rule 12(f) "are to be granted infrequently"). In order to prevail on a motion to strike, "Defendant must demonstrate that the matter at issue is both 'prejudicial' and of the type 'envisioned' by Rule 12(f)." *Billips*, 2011 WL 4829401 at *1 (citations omitted).

"Rule 23(d)(1)(D) provides that, '[i]n conducting an action under this rule, the court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.'" *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010). Some district courts "have held that a motion to strike class allegations, made pursuant to these provisions, is an appropriate device to determine whether the case will proceed as a class

action." *Id*. (finding it may be premature to strike class allegations involving factual disputes that may need discovery but "when a defendant advances a legal argument based on the pleadings, discovery is not necessary") (citations omitted). "[Rule 23(d)(1)(D)] is procedurally inseparable from Rule 23(c)(1)(A), which states that '[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.'" *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) (quoting 7B C. WRIGHT, A. MILLER & M.K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1795, at 40 (3d ed.2005)).

> After a determination has been made that a class action is not proper under Rule 23(c)(1), courts typically issue an order requiring that the pleadings be amended to reflect that decision[.]" While the issuance of such an order is often done without reference to Rule 23(d)(1)(D), this rule provides courts with the authority to mandate the amendment of the pleadings. In short, Rule 23(d)(1)(D) can be used to remove class allegations from a complaint after the class certification issue has be properly presented and determined by a court.

*Boatwright*, 2011 WL 843898, at *2.

B. Analysis

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, plaintiffs must satisfy each of Rule 23(a)'s four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). If any of these requirements cannot be satisfied, class certification is inappropriate. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 459 (4th Cir. 2003). In addition to establishing each of Rule 23(a)'s requirements, plaintiffs must also satisfy at least one provision of Rule 23(b). *Id.* Here, Plaintiffs seek to certify a "hybrid" class by demonstrating class entitlement to injunctive relief pursuant to Rule 23(b)(2) and monetary relief pursuant to Rule 23(b)(3). *See* ECF Nos. 29 ¶ 30; 53 at 31.

8

1. Rule 23(a)(2) Commonality Requirement

Flakeboard's initial challenge to Plaintiffs' class action allegations is that, as a matter of law, Plaintiffs' claims and prayer for relief as pleaded cannot satisfy the commonality requirement for certifying a class under Rule 23(a)(2). ECF No. 35 at 13-26. "Commonality requires that there are questions of law or fact common to the class." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir.2001). "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." *Id.* (citing 7A CHARLES ALLEN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1763 (3d ed. 2005)). "A question is not common, by contrast, if its resolution 'turns on a consideration of the individual circumstances of each class member.'" *Id.*

Citing to the Supreme Court's decision in *Dukes*, Defendant asserts that Plaintiffs' promotion claims based on "excessive subjectivity" are insufficient to satisfy Plaintiffs' burden of identifying a single discriminatory policy, procedure, or practice that provides the "glue" for holding together the promotion claims. *See Dukes*, 131 S. Ct. at 2552. Rather, Defendant argues, Plaintiffs' theories of discrimination require individual determinations for each challenged promotion decision.

Plaintiffs disagree, arguing they are entitled to pre-certification discovery to determine if requirements for class action have been met. Plaintiffs contend the facts in this case as alleged are distinguishable from the facts in *Dukes* and, therefore, will not be subject to same deficiencies. Unlike *Dukes*, with a putative nationwide class of 1.5 million claimants

spread among 3400 stores, here the proposed class consists of 25-50 employees in two small plants in one small town. The proposed claims involve an isolated set of decisions by a limited number of decision makers and a company-wide hostile work environment perpetrated and/or tolerated by the same small group of supervisors. *See* ECF No. 53 at 17-20.

As noted by Defendant, the Supreme Court found that in "appropriate cases" discretionary decision making can be the basis of Title VII liability. ECF No. 35 at 17. The Supreme Court acknowledged that not every employee in a company that used a system of discretion has a claim in common. *Dukes*, 131 S. Ct. at 2554.

Defendant claims that it then follows that Plaintiffs will be unable to prove "excessive subjectivity" without making individual determinations. The undersigned finds that cannot be determined at this juncture. The Supreme Court stated that "[a] party seeking to certify a *nationwide class* will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions." *Dukes*, 131 S. Ct. at 2554 (emphasis added). Here the proposed class is from one company, in one small town. Plaintiffs assert they will be able to show, after discovery, a common policy of discrimination existed at Flakeboard.

The Supreme Court's decision in *Dukes* supports Plaintiffs' contention that discovery into the merits of the claim is necessary before entering findings of fact on whether Rule 23 standards have been met. As an initial matter, the parties in *Dukes* had completed discovery and the motion at issue was Plaintiffs' motion for class certification. 131 S. Ct. at 2547-49 (noting posture of case and indicating plaintiffs presented evidence in support of their class certification motion). "We recognized in *Falcon* that 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and

that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 131 S. Ct. at 2551 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61, (1982)). "[O]ther district courts in this circuit have concluded that plaintiffs are 'generally entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met.'" *Griffin v. Harley Davidson Credit Corp.*, No. 8:08-cv-466-HFF-BHH, 2010 WL 233764, at *1 (D.S.C. Jan. 14, 2010) (citing *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 185 (D. Md. 2003); *Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 201-02 (D. Md. 2001)).[3]

Defendant also asserts that Plaintiffs' hostile work environment claims are too individualized to meet the Rule 23 commonality requirement. Defendant argues that the generalized allegations in Plaintiffs' Amended Complaint are not specific enough and provide no basis for common proof. ECF No. 35 at 22-26. Plaintiffs, citing to *Brown v. Nucor*,[4] assert the allegations from the named Plaintiffs, working in various positions at both Flakeboard plants, permit the "inference that the hostile work environment was plant-wide at both locations, and thus affect[ed] all members of the proposed class." ECF No. 53 at 29 (citing *Brown v. Nucor Corp.*, 576 F.3d 149, 157-58 (4th Cir. 2009) (reversing district court's denial of class certification on hostile work environment claim and finding "sufficient

---

[3] Although these cases were decided prior to the Supreme Court's decision in *Dukes*, they remain instructive at this stage of the proceedings.

[4] Defendant refers the court to a pending Motion for Decertification filed by the defendant in *Brown v. Nucor* based on the Supreme Court's decision in *Dukes*. *See* Defs.' Reply, ECF No. 61 at n.6. However, the decertification motion argues that the Supreme Court in *Dukes* created a "new standard of review" for weighing evidence at the *class certification stage*. Here, Plaintiffs have not yet reached that point, and therefore it is too early to determine whether Plaintiffs will be able prove a pervasive hostile work environment existed at Flakeboard. "A hostile environment determination can be made 'only by looking at all the circumstances.'" *Brown*, 576 F.3d at 157 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

11

evidence to indicate that all of the black employees were affected by the comments and actions of the white employees and supervisors in other departments.")).

Upon review of the Amended Complaint and the parties' briefs, the undersigned finds that Plaintiffs' class claims are facially plausible under the *Iqbal* standard. *Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The issues Defendant's motion to strike calls into question are precisely the issues that are decided in considering a future motion for class certification pursuant to Rule 23(a) and (b). *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (LBS)(JCF), 2012 WL 205875, *4 (S.D.N.Y. Jan. 19, 2012) (recommending defendant's motion to strike class allegations be denied as premature because arguments "indistinguishable from the issues that would be decided in a motion for class certification"). Before the court undertakes the required rigorous analysis to determine whether the prerequisite of commonality is satisfied, additional information is needed. "A district court may permit discovery to aid in its determination of whether a class should be certified." *Anselmo v. West Paces Hotel Group, LLC*, No. 9:09-2466-MBS, 2011 WL 1049195, at *1, *18 (D.S.C. Mar. 18, 2011). "Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, a decision denying class status by striking class allegations at the pleading stage is inappropriate." *Boatwright*, 2011 WL 843898, at *2 (citing *Falcon*, 457 U.S. at 160)). The undersigned finds that dismissal of Plaintiffs' class action allegations is inappropriate at this early stage of these proceedings and recommends Defendant's motion to strike be denied.

    2. Rule 23(b)(2) and Rule 23(b)(3) Requirements

In addition to declaratory and injunctive relief, Plaintiffs seek "back pay; interest on back pay; payment or provision of fringe benefits; compensatory damages; offers of promotion; punitive damages; [and] front pay." *See* Pls.' Compl., Prayer for Relief; ECF No. 29 at 26. Defendant argues that a class may not be certified under Rule 23(b)(2) when "each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557. Plaintiffs concede monetary damages are not available under Rule 23(b)(2), and instead assert they will seek certification of a hybrid class for injunctive and declaratory relief under Rule 23(b)(2) and monetary damages under Rule 23(b)(3).

Rule 23(b)(3) "is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Anselmo*, 2011 WL 1049195, at *19.

> Actions brought pursuant to Rule 23(b)(3) must meet two requirements, "predominance" and "superiority." The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." The "predominance" requirement of Rule 23(b)(3) does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which "predominate" over the individual issues. The superiority inquiry tests whether a class action is "superior to other methods for the fair and efficient adjudication of the controversy."

*Id*. (internal citations omitted.) Defendant argues that because Plaintiffs cannot satisfy the commonality requirements of Rule 23(a)(2), they cannot satisfy the more stringent predominance requirements of Rule 23(b)(3). ECF No. 35 at 27-28. Defendant also contends that Plaintiffs' disparate treatment claims are unsuitable for class certification under 23(b)(3) because by nature these are individual claims. *See Talley v. ARINC, Inc.,* 222 F.R.D. 260, 266 (D. Md. 2004) (finding that, unlike disparate impact, disparate treatment allegations demand specific factual inquiries and individual analysis). Plaintiffs do not contest that analyses for commonality and predominance is similar, but argue that they have alleged

13

enough to state plausible Rule 23 class claims under 23(a) and 23(b)(3). ECF No. 53 at 31-35.

The undersigned finds that at this pre-discovery stage the court cannot definitively determine whether a class action can be maintained under Rule 23's commonality and predominance requirements. Whether Plaintiffs will be able to obtain certification of a hybrid class is a decision the court can make it determines if a class treatment is appropriate. "The district court can address plaintiffs' claims for injunctive or other relief after liability and other common issues are determined." *Brown*, 576 F. 3d at 159 (citing Fed. R. Civ. P. 23(c)(5); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361-62, (1977) ("[A]s is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial."); *Hill v. W. Elec. Co.*, 672 F.2d 381, 387 (4th Cir. 1982) ("Bifurcation of Title VII class action proceedings for hearings on liability and damages is now commonplace . . ..").[5]

III.    Conclusion

For the reasons discussed above, the undersigned recommends that the court deny Defendant's motion to strike and/or dismiss Plaintiffs' class allegations (ECF No. 35). Defendant's initial motion to strike (ECF No. 6) is moot and should be dismissed.

---

[5] In a closing footnote, Defendant suggests certification of a hybrid class would run afoul of the Seventh Amendment's re-examination clause because it would necessarily require separate juries for the liability and damages phases. ECF No. 35 at 30, n.2. Plaintiff disagrees. *See* ECF No. 53 at 31-32. The undersigned finds that this issue is premature at this stage. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) (finding it premature to address constitutional arguments before district court adopted a trial plan); *see also Chen-Oster*, 2012 WL 205875, at *8 (citing *Ellis* and recommending a finding that such a challenge is premature at pleading stage).

IT IS SO RECOMMENDED.

March 26, 2012 Kaymani D. West
Florence, South Carolina United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**